# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**LOIS M. VIRKLER,**

                              **Plaintiff,**

**-vs-**                                           **Case No. 6:04-cv-1652-Orl-28KRS**

**HERBERT ENTERPRISES, INC.,**

                              **Defendant.**

_____

## ORDER

Plaintiff Lois Virkler ("Ms. Virkler") brings this action for patent infringement and fraudulent inducement against Defendant Herbert Enterprises, Inc. ("HEI"). This case is before the Court on Defendant's Motion for Summary Judgment of Noninfringement (Doc. 40), in response to which Ms. Virkler has filed a Memorandum in Opposition (Doc. 42). Also before the Court is Defendant's Motion for Summary Judgment on Count Two of Plaintiff's Complaint (Doc. 47)[1] and Plaintiff's Memorandum in Opposition (Doc. 53) thereto. Having considered the parties' submissions and pertinent law, the Court concludes that both of HEI's motions must be denied.

_____

[1] This motion is entitled "Defendant's Combined Motion to Dismiss for Failure to State a Claim and Motion for Summary Judgment on Count Two of Plaintiff's Complaint." (See Doc. 47). After this motion was filed, Plaintiff was granted leave to file an Amended Complaint as to Count Two (see Mins. of 09/19/05 Mot. Hr'g, Doc. 61), and Plaintiff has since filed an Amended Complaint (Doc. 60). Thus, the motion (Doc. 47) is moot insofar as it seeks dismissal of the original Count Two. However, insofar as it seeks summary judgment on Count Two, the motion is addressed herein on its merits; although the motion was filed with respect to Count Two of the original Complaint, it is construed with respect to Count Two of the Amended Complaint.

I.  Background

The patent at issue is Patent Number 5,837,296 ("the '296 Patent"), which was issued

to Ms. Virkler in 1998 and pertains to an ice cream scoop which can be filled with warm tap

water for ease in serving the ice cream.  The '296 Patent contains only one claim, which

reads:

> I claim:
> 1.  An ice cream scoop comprising:
>
> a bowl shaped section having a concave front surface forming
>    a rim at the highest point of said concave front surface
>    rounding outward forming a back surface and a handle
>    between 5 inches and 8 inches in length extending from
>    said front and back surfaces of said bowl shaped section
>    in the same direction from one side of said bowl shaped
>    section forming a hollow tunnel interior throughout said
>    handle and said bowl shaped section forming an opening
>    between 4 inches and 8 inches in circumference at the
>    end of said handle opposite said bowl shaped section
>    whereby said ice cream scoop can be filled with warm tap
>    water.

('296 Patent, col. 4).  The claim language that is at issue in Count I of this case is the

language "an opening between 4 inches and 8 inches in circumference" and "a hollow tunnel

interior throughout said handle and said bowl shaped section."

Ms. Virkler filed a pro se patent application on December 11, 1996.  (Ex. A to Aff. of

Lois Virkler).  In that initial application, Ms. Virkler described her ice cream scoop in part as

follows:  "The open end of the handle is between 4 inches and 8 inches in circumference

making it large enough to fit over an average faucet allowing the user to place the open end

over a faucet nozzle filling the ice cream scoop with warm tap water by turning on an

average household faucet." (<u>Id.</u> at 5) (patent drawing reference numeral omitted).  Ms.

Virkler's initial application also stated in part:

> The above description should serve as exemplification[]s of the preferred embodiments of the intended invention.  Those skilled in the art of manufacturing similar kinds of tools may envision many other possible variations within [its] scope.  A skilled artisan will be able to produce the intended invention with the most efficient dimensions of any of the embodiments contained within this description such as the bowl shaped scoop section, handle and removable cap.  Accordingly, the reader is requested to determine the scope of the invention by the appended claims and their legal equivalents, and not by the examples which have been given.

(<u>Id.</u> at 7).[2]

On October 3, 1997, the Patent and Trademark Office ("PTO") sent Ms. Virkler an

Office Action Summary rejecting her sole claim.  (Ex. B to Virkler Aff.).  The Office Action

stated in part that the claim was rejected on the basis of obviousness; the Examiner found

the claim unpatentable over the prior art of Kelly, Shultz, and Fried taken together with the

prior art of Wilk.  (<u>Id.</u> at 2).

In response to the October 3, 1997 Office Action, Ms. Virkler sent an "Amendment"

to her application.  (Ex. G to Virkler Aff).  In that "Amendment," Ms. Virkler argued that her

claim was patentable over the prior art cited by the Examiner.  (<u>Id.</u>).  Ms. Virkler stated in

part:

> In regard to the specified size of the handle of the pending invention, the handle must be large enough to fit over a faucet with a little extra room for visual guidance of the flowing water.

---

[2]This paragraph also appears – exactly as written in the initial application – in the '296 Patent, immediately prior to the claim itself.  (<u>See</u> '296 Patent cols. 3-4).

> All ice cream scoops on the market today have handles that are too small for this purpose.  Most ice cream scoops have handles which measure between 3 and 3½ inches around at their largest point and up to 4½ inches in length.  An ice cream scoop having less than 4 inches in handle circumference would be too small to be filled neatly with water from a faucet.  None of the prior art references even define the size of the handle and none claim a defined size.  Since the handle opening in the pending invention is large enough to encompass a faucet and a removable cap, it allows for convenient liquid heat transfer without being confined to the faucet as in Wilk et al. . . .
>
> If the examiner finds these arguments convincing, it would be asked that the examiner write appropriate claims if they are not correct since the inventor has no legal advice in this patent application.

(Id. at 3-4).

In a May 5, 1998 Notice of Allowability, the Examiner informed Ms. Virkler that the lone claim would be allowed.  (Def.'s Ex. 9).  The Examiner explained that the claim was being allowed because:

> The prior art of record does not fairly suggest an ice cream scoop comprising a hollow handle comprising a circumference between 4 to 8 inches, which is large enough to fit the outer diameter of an outlet of a faucet and a length between 5 to 8 inches whereby the volume of the handle allows a large amount of warm tap water contained in the handle to slightly melt the frozen product in the scoop.  Wilk et al., in combination with Kelly, Shultz or Fried, do not fairly suggest to design a handle having the dimensions recited in the claim since the reference teaches circulating warm tap water through the hollow handle.

(Id. at 3-4 ¶ 3).  The PTO issued the '296 Patent to Ms. Virkler on November 17, 1998.  The single claim of the '296 Patent, quoted above, reads exactly as it did in Ms. Virkler's original pro se patent application.  (See Ex. A to Virkler Aff. at 8).

-4-

In late March 2001, HEI's President, William J. Herbert, contacted Ms. Virkler regarding commercializing and marketing her ice cream scoop.  (See, e.g., Joint Pretrial Statement, Doc. 75 at 2, 5).  A few weeks later, on April 16, 2001, Ms. Virkler and HEI entered into a License Agreement regarding the '296 Patent.  (Ex. I to Virkler Aff.).  In the License Agreement, Ms. Virkler granted HEI an exclusive license to use the '296 Patent.  (Id. ¶ 1).  HEI was required to make royalty payments as a percentage of licensed product sales and to submit written reports with respect to those royalty payments.  (Id. ¶ 2).  Minimum royalty payments of $1000, $5000, and $10,000 were required for the first three years, respectively, of the license.  (Id. ¶ 3).

Also on April 16, 2001, the parties entered into a Consulting Agreement.  (Ex. J to Virkler Aff.).[3]  The Consulting Agreement states that HEI would provide services including "[t]est data development, marketing presentation development, licensee identification, license negotiations covering HEI ice cream scoop design/Virkler US patent 5,837,296, and license maintenance activities."  (Id. ¶ 1).  It also includes a provision stating that "HEI is required to disclose any outside activities or interests, including ownership or participation in the development of prior inventions, that conflict or may conflict with the best interests of Virkler.  Prompt disclosure is required under this paragraph if the activity or interest is related, directly or indirectly, to:  a product or product line of Virkler[, or] any activity that HEI may be involved with on behalf of Virkler."  (Id. ¶ 8).

---

[3]Although the copy of the Consulting Agreement that is in the record does not include a signature on behalf of HEI, HEI does not contest that the parties entered into this Consulting Agreement.

As phrased by Ms. Virkler's attorney during oral argument on the summary judgment motion and in a legal memorandum, HEI allegedly put Ms. Virkler "on ice" and "scooped the market" for fillable ice cream scoops with a knock-off product which Ms. Virkler alleges infringes the '296 Patent.  (See, e.g., Doc. 53 at 16).  HEI admits that it has sold a water-fillable ice cream scoop (which it refers to as "the Herbert ice cream scoop"), but HEI denies that the scoop infringes the '296 Patent.  (See Decl. of William J. Herbert, Def.'s Ex. 3).  In a December 18, 2001 e-mail to Ms. Virkler, HEI's President, Mr. William Herbert, informed Ms. Virkler:

> My patent attorney advised that I could not use your patent number on my product (believe me I surely wanted to).  Since my product water opening is less in diameter than your claim, then he thought it would be illegal for me to use your patent number. . . .
> I will send you a scoop, video-tape demo, and a commercial update after the holidays.  I'm up to my ears in getting scoops made.  The first customer (Williams Sonoma) that we approached loved the scoop and ordered 15,000 of them for a March delivery.  They are going to feature it as "tool of the month['] in their catalogue.[]
> I'm hoping that sales will really take off after that, but I'm actively selling the scoop to two other prestige accounts.  I'd like to keep exclusive license rights to your patent and I, therefore, am planning to pay you the minimum annual royalty of $1000, due next April.

(Ex. A to Aff. of Herbert Allen).

On March 15, 2002, Ms. Virkler's attorney sent Mr. Herbert a letter stating in part:

> First, Ms. Virkler advises me that, while Herbert Enterprises is manufacturing products under the license agreement, no royalty reports have been sent and no quarterly royalties have been paid as required by Section 2 of the license agreement. . . .

> Second:  Ms. Virkler advises me that in a conversation
> with you, you expressed the opinion that your ice cream scoop
> product is not covered by the claim of Ms. Virkler's patent, and
> therefore does not require the payment of a royalty.  Ms. Virkler
> has provided me with a specimen of your product, which meets
> all of the specific limitations of the claim in the '296 Patent, either
> literally or under the doctrine of equivalents.

(Ex. B to Allen Aff.).  Mr. Herbert's response to this letter was to Ms. Virkler directly rather

than to her attorney.  (Letter from Herbert to Virkler of 03/30/02, Ex. C to Allen Aff.).  In that

letter, Mr. Herbert stated that he was "so sorry that [she] felt [she] needed to consult an

attorney regarding [their] license and consulting agreement" and maintaining his position that

"his" scoop design did not infringe her patent.  (Id.).

On May 12, 2003, Ms. Virkler wrote to Mr. Herbert to express her hope that he would

send her the $5000 minimum royalty payment and that he would "do what [his] integrity tells

[him] is right."  (Ex. D to Allen Aff.).  On December 1, 2003, Ms. Virkler's attorney sent Mr.

Herbert a letter informing him that "[i]n view of the continuing breach of the [license]

agreement, Ms. Virkler has instructed me to inform you that the license agreement is hereby

terminated by virtue of your breach."  (Ex. F to Allen Aff.).  Ms. Virkler filed this suit on

November 10, 2004.  (Doc. 1).

## II.  Discussion

### A.  Summary Judgment Standards

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to a judgment

as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the burden of establishing that no genuine issues of material fact remain.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations."  Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997).  "The evidence presented cannot consist of conclusory allegations or legal conclusions."  Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991); see also Fed. R. Civ. P. 56(e) (providing that nonmovant's response "must set forth specific facts showing that there is a genuine issue for trial").

In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 245 (1986).  However, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  Moreover, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson, 477 U.S. at 249.

B.  The Merits of Defendants' Motions

1.  Defendant's Motion for Summary Judgment of Noninfringement (Doc. 40)

"A determination of patent infringement requires a two-step analysis. 'First, the court determines the scope and meaning of the patent claims asserted . . . . [Second], the properly construed claims are compared to the allegedly infringing device.'  Step one, claim construction, is an issue of law . . . . Step two, comparison of a claim to the accused device, requires a determination that every claim limitation or its equivalent is found in the accused device.  Those determinations are questions of fact." AK Steel Corp. v. Sollac, 344 F.3d 1234, 1238 (Fed. Cir. 2003) (citations omitted).  "The patentee bears the burden of proving infringement by a preponderance of the evidence." CVI/Beta Ventures, Inc. v. Tura LP, 112 F.3d 1146, 1161 (Fed. Cir. 1997); see also Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc., 424 F.3d 1293, 1310 (Fed. Cir. 2005) ("To prove direct infringement, the plaintiff must establish by a preponderance of the evidence that one or more claims of the patent read on the accused device literally or under the doctrine of equivalents.").

In its motion relating to Count I, HEI seeks summary judgment that the scoop sold by HEI does not infringe the '296 Patent.  HEI contends that the Herbert scoop neither literally infringes nor infringes under the doctrine of equivalents.  As to the latter issue, HEI also argues that Ms. Virkler is precluded from asserting infringement by equivalents because of prosecution history estoppel.

a.  Literal Infringement

Ms. Virkler does not appear to contend with any vigor that HEI's scoop literally infringes the '296 Patent, and indeed it does not.  "'Literal infringement requires that each

and every limitation set forth in a claim appear in an accused product.'" <u>Cross Med. Prods.</u>, 424 F.3d at 1310 (quoting <u>Franks Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.</u>, 389 F.3d 1370, 1378 (Fed. Cir. 2004)).  The sole claim of the '296 Patent contains at least two limitations that do not literally appear in the Herbert scoop.  First, the claim of the '296 Patent specifies "an opening between 4 inches and 8 inches in circumference at the end of [the] handle"; it is undisputed that the Herbert scoop's opening is less than 4 inches in circumference.  Second, the claim of the '296 Patent describes "a hollow tunnel interior throughout said handle and said bowl shaped section."  It is uncontested that the bowl-shaped section of the Herbert scoop is hollow only in part rather than "throughout."  Although Ms. Virkler contends that the claim language does not require the entire interior of the bowl-shaped section, this argument is not well-taken.  There is no other way to read this claim language, which plainly requires "a hollow tunnel interior throughout . . . said bowl shaped section."  Thus, the Herbert scoop does not literally infringe the '296 Patent for this second reason as well.

      <u>b.  Infringement Under the Doctrine of Equivalents</u>

      Ms. Virkler's main contention is that the HEI scoop infringes the sole claim of the '296 Patent under the doctrine of equivalents.  This doctrine "'allows the patentee to claim those insubstantial alterations that were not captured in drafting the original patent but which could be created through trivial changes.'" <u>Aquatex Indus., Inc. v. Techniche Solutions, Inc.</u>, 419 F.3d 1374, 1382 (Fed. Cir. 2005) (quoting <u>Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.</u>, 535 U.S. 722, 733 (2002)); <u>see also</u> <u>Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.</u>, 103 F.3d 1571, 1577 (Fed. Cir. 1997) ("Application of the doctrine of equivalents may allow a

patentee to recover for infringement though the accused device falls outside the literal scope of the claims if the differences between the claimed invention and the device are insubstantial.").

"Under [the doctrine of equivalents], a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention."  Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 21 (1997).  "Infringement under the doctrine of equivalents occurs when a claimed limitation and the accused product perform substantially the same function in substantially the same way to obtain substantially the same result."  Bus. Objects, S.A. v. MicroStrategy, Inc., 393 F.3d 1366, 1374 (Fed. Cir. 2005).

HEI asserts, however, that Ms. Virkler is precluded from arguing infringement under the doctrine of equivalents because of prosecution history estoppel.  "'The doctrine of prosecution history estoppel limits the doctrine of equivalents when an applicant makes a narrowing amendment for purposes of patentability, or clearly and unmistakably surrenders subject matter by arguments made to an examiner.'"  Aquatex, 419 F.3d at 1382 (quoting Salazar v. Procter & Gamble Co., 414 F.3d 1342, 1344 (Fed. Cir. 2005)).  "Prosecution history estoppel acts as one check on application of the doctrine of equivalents by precluding a patentee from regaining, through litigation, coverage of subject matter relinquished during prosecution of the application for the patent.  Whether estoppel applies is a question of law." Wang Labs., Inc., 103 F.3d at 1577-78 (citations omitted).

"There are two distinct theories that fall under the penumbra of prosecution history estoppel – amendment-based estoppel and argument-based estoppel."  Deering Precision Instruments, L.L.C. v. Vector Distrib. Sys., Inc., 347 F.3d 1314, 1324 (Fed. Cir. 2003).  Although Ms. Virkler submitted what was entitled an "Amendment" to the PTO in response to an Office Action, no amendment was ever made to her claim.  Instead, the lone claim of the '296 Patent as issued reads exactly as it did in Ms. Virkler's initial application.  Thus, HEI relies on argument-based prosecution history estoppel rather than amendment-based estoppel.

"To invoke argument-based estoppel, the prosecution history 'must evince a clear and unmistakable surrender of subject matter.'"  Aquatex, 419 F.3d at 1382 (quoting Pharmacia & Uphohn Co. v. Mylan Pharm., Inc., 170 F.3d 1373, 1376-77 (Fed. Cir. 1999)).  "To determine if subject matter has been relinquished, an objective test is applied, inquiring 'whether a competitor would reasonably believe that the applicant had surrendered the relevant subject matter.'"  Aquatex, 419 F.3d at 1382 (quoting Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448,1457 (Fed. Cir. 1998)).

HEI contends that Ms. Virkler clearly and unmistakably surrendered a scoop handle of a circumference of less than four inches and that therefore she is estopped from arguing that the Herbert scoop's handle infringes under the doctrine of equivalents.  HEI avers that Ms. Virkler argued during prosecution that the "circumferential dimensions" of her scoop were critical to the invention and that she surrendered subject matter involving smaller-circumferenced handles.

However, the prosecution history does not evidence the clear and unmistakable surrender of subject matter that is required for the application of argument-based prosecution history estoppel.  Applying an objective test, a competitor skilled in the art would see that Ms. Virkler's emphasis on the dimensions was for the purpose of explaining that the handle needed to fit over a kitchen faucet.  In other words, the dimensions are important not because of what the specific dimensions are but because of the purpose that the dimensions serve – fitting over a faucet.  Ms. Virkler made clear that the reason she had described her patent with those dimensions was so that a faucet would fit into the handle.  She also included a provision in her application, which was included verbatim in the text of the '296 Patent itself, which states in part that "[a] skilled artisan will be able to produce the intended invention with the most efficient dimensions of any of the embodiments contained within this description such as the bowl shaped scoop section, handle and removable cap.  Accordingly, the reader is requested to determine the scope of the invention by the appended claims and their legal equivalents, and not by the examples which may have been given."  ('296 Patent, cols. 3-4).  This statement would not lead a competitor to reasonably believe that Ms. Virkler had clearly and unmistakably surrendered handles with circumferences of less than four inches that fit over a faucet, notwithstanding Ms. Virkler's belief that a circumference of four inches or greater was necessary for this task.

Thus, Ms. Virkler is not barred by prosecution history estoppel from arguing that the Herbert scoop infringes the '296 Patent under the doctrine of equivalents.  The issue of whether the Herbert scoop handle "performs substantially the same function in substantially the same way to obtain the same result" as Ms. Virkler's four-inches-or-greater-

circumference handle is a question for the jury, as is the issue of whether the partially hollow bowl section of the Herbert scoop is equivalent to Ms. Virkler's "hollow throughout" bowl section.  HEI's motion for summary judgment of noninfringement is therefore denied.

### 2.  Defendant's Motion for Summary Judgment on Count Two (Doc. 47)

In Count Two, Ms. Virkler brings a claim of fraudulent inducement and/or unjust enrichment.  She contends that when HEI entered into the  License Agreement and the Consulting Agreement, HEI had no intention of fulfilling its obligations thereunder.  HEI asserts that there is no evidence to support Mrs. Virkler's claim.  However, this claim survives summary judgment.

The parties seem to disagree about whether Ohio law or Florida law governs this claim, but no matter which state's law is applied, the summary judgment motion must be denied.  In Florida, the elements of fraud are:  "'(1) a false statement concerning a specific material fact; (2) the maker's knowledge that the representation is false; (3) an intention that the representation induces another's reliance; and (4) consequent injury by the other party acting in reliance on the representation.'" Wadlington v. Cont'l Med. Servs., Inc., 907 So. 2d 631, 632 (Fla. 4th DCA 2005) (quoting Cohen v. Kravit Estate Buyers, Inc., 843 So. 2d 989, 991 (Fla. 4th DCA 2003)).  "As a general rule, 'a false statement of fact, to be a ground for fraud, must be of a past or existing fact, not a promise to do something in the future.'  An exception to this general rule is that 'where the promise to perform a material matter in the future is made without any intention of performing or made with the positive intention not to perform' a cause of action for fraud may proceed to a jury." Id. at 632 (citations omitted);

accord Thor Bear, Inc. v. Crocker Mizner Park, Inc., 648 So. 2d 168, 172 (Fla. 4th DCA 1994) ("A successful action for fraudulent representation may not ordinarily be premised upon a promise of future action.  However, an exception to this rule is recognized where the promise of future action is made with no intention of performing or with a positive intention not to perform.") (citations omitted).  The law of Ohio is in accord with these principles.  See, e.g., Dunn Appraisal Co. v. Honeywell Info. Sys. Inc., 687 F.2d 877, 883 (6th Cir. 1982) ("A promise made with a present intention not to perform it is a misrepresentation of an existing fact, i.e., the speaker's present state of mind . . . .") (applying Ohio law); Snell v. Salem Ave. Assocs., 675 N.E.2d 555, 568 (Ohio Ct. App. 1996) ("Although the law provides that 'fraud cannot be predicated upon a representation concerning a future event, . . . a promise made with a present intention not to perform it is a misrepresentation of an existing fact – the speaker's present state of mind.'") (quoting Link v. Leadworks Corp., 607 N.E.2d 1140, 1145 (Ohio Ct. App. 1992)) (alteration in original).

At a minimum, Ms. Virkler's fraud-in-the-inducement claim survives summary judgment on the basis that genuine issues of material fact remain regarding whether HEI had the intention to perform at the time it made the representations.  Thus, HEI's motion for summary judgment on Count II is denied.

### III.  Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1.    Defendant's Motion for Summary Judgment of Noninfringement (Doc. 40) is **DENIED**.

2.  Defendant's Motion to Dismiss for Failure to State a Claim (Doc. 47) is **DENIED as moot**.

3.  Defendant's Motion for Summary Judgment on Count Two (Doc. 47) is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida this 23rd day of November, 2005.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party